Parker, J.
This case is brought into this court to reverse the judgment of the Wood county common pleas court, against George H. Baker and Eewis C. Winchell upon two promissory notes for $224.87 each, signed “Cribbs & White, per W. W. White.”
John Brennan & Co., plaintiff below, charges that all the defendants, James Cribbs, William W. White, George H. Baker and Eewis C. Winchell, were partners, doing business in the firm name of Cribbs & White, and also in the name of Baker, Cribbs & White, and that these notes were partnership obligations, in other words that the defendants were doing business under two firm names indiscriminately. Neither Cribbs nor White answered or demurred to plaintiff’s petition.
Baker and Winchell defended, on the grounds that there was no such partnership; that the notes were not partnership obligations of any firm of which they were members, and that they were in no way obligated to pay the notes, or the debt of which they were evidence.
The trial resulted in a verdict against all the defendants. Baker and Winchell filed a. motion to vacate the verdict, which the common pleas court overruled, entered^ judgment on the verdict against all the parties, and Baker and Winchell prosecute error here against plaintiff below.
All the evidence received in the court below is embodied in a bill of exceptions from which it appears that all of the defendants below were operating oil leases; that Cribbs and White were interested in certain lease with Baker and Winchell, and also in other leases, and that there was a partnership doing *243 business in the name of Cribbs & White, owning a one-half interest in certain leases in which Baker owned a quarter and Winchell a quarter.
The notes in suit were given for two boilers, sold by Brennan & Co. through an agent, who testifies that he transacted the business with Mr. White.
It does not appear that Baker or Winchell participated in •any way in the purchase of this property, or that they had any knowledge of the sale until after it was made'and the property moved upon the premises.
They say there was no partnership, and that the understanding, with this particular part of the equipment, as well as generally. was that each one should furnish his proportionate share, and when it came to the matter of boilers, since the lease required four boilers, it was arranged that Baker should furnish one, Winchell one, and Cribbs & White two. They say that they each furnished the boiler he agreed to furnish, and Cribbs & White purchased these two boilers from the plaintiff and furnished them in pursuance of the aforesaid agreement.
The first question presented for our consideration, is as to the admissibility in- evidence of certain testimony given by Baker upon the trial of another case against this alleged firm.
It appears that one Kidd sued the defendants as a partnership, and that, upon the trial of that case, Baker testified that there was a partnership existing during certain years, covering the time of the transaction sued upon here, and that he and Winchell were members of that partnership.
Baker objected to the admission of this evidence on the ground that it was simply a statement of a legal conclusion and not an admission of a fact.
It was admitted over defendant’s objection, and exception was taken.
We are of the opinion that the admission of partnership relations involves the admission of facts, as well as law, and whether or not there is a partnership is a mixed question of law and fact.
The weight and value of this testimony should be submitted to the jury, and it is a matter of legitimate argument to the jury that one may suppose he is a partner, when as a matter *244 of fact he is not a partner, that he is mistaken about the legal status, growing out of his relations with the other parties. We think this testimony was admissible, and that the common, pleas court did not err in admitting it.
It is further contended that the verdict against Baker and Winchell is contrary to law, and against the weight of the evidence, as to the existence of a partnership, or a course of conduct such as would make them chargeable in this transaction as partners.
Upon the general subject of partnership in the operation of oil and gas leases, I will read a few extracts from decisions of the Supreme Court of Pennsylvania. The courts of that state have had a much wider experience in that business than the courts of Ohio, or perhaps of any other state.
In Taylor v. Fried, 161 Pa. St., 53, the syllabus reads: “A division of the products between tenants in common does not make them partners, although they may have contributed labor or money to raise it. No presumption of partnership arises from the mere fact of cotenancy, etc.
“Persons who join in the purchase of goods, not for the purpose of selling them again, but for the purpose of dividing the goods among themselves, are not partners, and are not liable to third parties as if they were.”
Now the property referred to .there, consisted of a boiler sold to one of the parties, and used upon a certain lease in which the other defendants were interested, and with respect to the facts the court says: “We think it is clear that W. P. Black and his vendees were tenants in common of the^ leasehold, and that the agreement under which he drilled the well' did not create a partnership interest or a joint liability. It is-quite evident that it was not the intention of the parties to be- > come partners in the work to which their agreement was limited. It is probable that Black and his vendees believed, or at least entertained a hope, that, the work contracted for would' demonstrate that the leasehold was good oil property, but the latter did not consent to be jointly bound to the former, his employes or material men, for all or any portion of the price of it, nor did their agreement include anything more than the drilling of the well. We have then a case in which one coten *245 ant improves or tests the common property under an agreement with each of the other cotenants to pay his share of the expenses incurred in making the improvement or test. Thus the promise of each cotenant created a distinct and individual liability which was measured by his interest in the leasehold. This liability was not affected by the mere fact that oil was obtained and run in the pipe line to the credit of each cotenant in the proportion above stated, because (i) the operation of the well' was not included in the agreement under which it was constructed, and (2) a division of -the product between tenants in common does not make them partners, although they may have contributed labor or money to raise it.”
It appears, I should say to make this matter more clear, that Black had agreed to drill this particular well at his own expense.
I next call attention to Walker v. Tupper, 152 Pa. St., 1, the syllabus of which reads as follows:
“Participation in profits is the most generally accepted test of the existence of á partnership, and though its presence is, not conclusive in favor of, its absence may be regarded as conclusive against, partnership.
- “The owner of an oil lease assigned an undivided three-fourths interest in the lease to two other persons. The assignees agreed to drill two wells at their own expense without any liability upon the part of the assignors to defray any of the expense of drilling, but the assignors were to pay one-fourth of the operating expenses of the wells, and one-fourth of the bonus due the lessor.
“The assignees were to drill a third well, the assignors to pay one-eighth of the expenses thereof. It was further agreed that the assignors should be the owners of the full one-fourth of all the production, (after deducting the royalty), machinery, rigs, casing, buildings and appliances of all descriptions, which may be placed upon said leasehold 'for use in operating the same, Held, that there was not a partnership relation between the assignors and the assignees, and that a contract for drilling a well, entered into by the assignees, would not bind the assignors.
“While the division of the product in specie does not neces *246 sarily negative the idea of the partnership, it raises a presumption against it to overcome which an actual intent to become partneis should clearly appear.”
In the discussion of this case which begins on page 8 and runs over several pages, where the facts are referred to as well as the law, it will be observed that the facts in the case are in some of their aspects like the case at bar, In this particular they are alike. While it was held in that case under the law that certain of the defendants were not partners, it was held that certain others, Tuppor and Hatry, were in a different position, and were partners. And so, if we arrive at the conclusion that Baker and Winchell were not partners, it does not necessarily follow that Cribbs & White were not partners, and might not be chargeable as such with the proportion of the expense of operation that they jointly had agreed to sustain.
Another case is Brown v. Jaquette, 94 Pa. St., 113. This did not involve an oil and gas lease, but the lease of a farm for agriculture, and it is cited by way of illustration of the general principles of law involved.
“J agreed to farm the land of B for which he was to have one-half of the proceeds, each party furnishing one-half of the seed, poultry, stock, hogs, etc. J was to find all the farming implements and the working stock, and all the requisite labor, and pay the road tax, and one-half of all other taxes. He was also to submit a statement every three months, and make settlement:
“Held, that this agreement was a lease of the farm on shares, and not a partnership.
■ “J's interest in a portion of the proceeds of the farm was sold at sheriff's sale, on a judgment against him, and B claimed that he was entitled to a partnership account, and that the sheriff's vendee only took title to the balance due J after said account' — Held: that no such claim could be sustained.”
In Dunham v. Loverock, 158 Pa. St., 197, is also a case in point. The syllabus reads:
“Tenants in common may become partners like other persons where • they agree to assume the relation toward each other; but the law will not create the relation for them as the consequence of a course of conduct and dealing naturally re *247 ferable to the relation already existing between them, which makes such a course of conduct to their common advantage.
“An agreement between two tenants in common of an oil lease to drill an additional well on the leasehold at the common cost of the cotenants will not as between themselves create n partnership. In the absence of a distinct agreement between them that their relations to the property and to each other should be changed, the presumption is that the old relation continued, and that they treated with each other as owners of separate interests in an undivided lease.”
That is pertinent here in view of the form that these defendants acquired their different interests from different persons at different times.
I also call attention to Butler Sav. Bk. v. Osborne, 159 Pa. St., 10, the syllabus of which reads: .
“Tenants in common engaged in the improvement or development of the common property will be presumed, in the absence of proof of a contract of partnership, to hold the same ■relation to each other during such improvement or development, as before it began. As to third persons, they may subject themselves to liability as partners by a course of dealing or by their acts and declarations, but as to each other, their relation depends on their title, until by their agreement with .each they change it. When tenants in common of an oil lease agree to carry on operations upon their land, each contributing towards the expenses in proportion to his respective interest •.in land, they will be considered with respect both to themselves and third persons as the ordinary owners of land, working •their respective shares of the wells, responsible only for their •own acts, subject to no laws of partnership whatever, and possessing distinct rights in the property.
“Two tenants in common of an oil lease entered into an agreement with each other to drill wells on the leasehold property, •each to pay one-half of the costs of sinking the well and pumping the oil. The oil produced was to be run into pipe lines •serving the district, and there credited one-half to each of the ■tenants in common: Held, that no partnership .existed between the tenants in common.”
The plaintiff below must maintain his claim upon one of *248 two grounds; either that Baker and Winchell were actual partners, or that they held themselves out as such. If he relies on. the latter, he must maintain it on the principle of estoppel.
It is not sufficient for him to show that they held themselves out to some one else as partners, or that they dealt in such a way as would cause other people to regard them as. partners, but he must show that the alleged partners dealt with him in such a way as to give him the right to suppose they were partners, or that they dealt with others in that way, and that it came to his knowledge before he dealt with them, that they had been so dealing, and from this he believed them to-be partners.
In this case, on the evidence, we think it is perfectly deaf-that these defendants were not, in fact, partners.
Mr. Cribbs has died since the execution of the notes. Mr. White was not present at the trial, and both Mr. Baker and Mr. Winchell testify that there was no partnership agreement,, and that they had no knowledge of any transaction in which the alleged members of the partnership seemed to be acting-for a partnership, or signing a firm name.
Plaintiff’s agent testified that his transaction was with Mr-White; that the first notes, of which those sued on were renewals, were signed “Baker, Cribbs & White.”
If that is true, it does not appear that Mr. Baker knew that. Mr. White had-given notes for those boilers, signed “Baker,. Cribbs & White,” and by that of course Mr. Baker would not be estopped to deny that there was such a firm as “Bakers Cribbs & White.”
The agent does not testify that he was informed that there-was such a firm, or that there was a firm of which Baker and Winchell were members. Pie says he acquired his information from the best source available, The Oil Well Company.
Exactly what the Oil Well Company people told him, he does not state, and since it does not appear that they were-authorized to make any statements binding on Baker or Winchell, whatever they might state would be the merest hearsay, and <t does not appear that the plaintiff ever had any other-transaction with the alleged firm. We find no evidence, whatever, on which to fairly base a conclusion that they were part— *249 ners, or that they held themselves out as such to the plaintiff,, so as to entitle him to regard and hold them as partners in this transaction.
There is no evidence tending to prove Mr. Winchell a partner. As to Mr. Baker, there is some evidence, viz., his admission that there was a partnership. If that admission was based upon the facts in evidence in this case, then it was clearly wrong, and it might be said of him that there was no evidence • tending to show that there was such a partnership.
The admission of partnership involves an admission of facts, and might involve the admission of other facts than those disclosed in this record, and therefore we are not justified in saying, with respect to him, that there was no evidence of partnership, but we do say as to him that the conclusion of the jury is against the weight of the evidence.
I have called attention to a number of Pennsylvania authorities, but there is one Ohio authority in line with this case. In Meridan Nat. Bk. v. McConica, 8 C. C., 442, it was held that the debtors were not chargeable as partners. Their relations and operations were those that were ordinarily carried on by joint owners of oil property, and very closely resemble-those described here.
With respect to the situation in that case, the court says:
“These are in substance ,,the material facts * * * that are offered in evidence tending to prove the intention on the part of these parties to become partners. To a majority of the court this falls short of proving such relationship. But, on the contrary, it proved beyond question that they were tenants • in common. It is urged that the fact .that these parties, under ■ a firm name, bought property to be used in.connection with, this license or contract, and gave notes in the same firm name to pay for it, charges them as partners. This is, no doubt, true as to the parties that dealt with them in that relation, but it is-not because they are a partnership in fact, but because by the law of estoppel, they would be estopped from denying that relationship. But as to all other parties, the question is, was-there a partnership in fact?
It is further urged from the fact that the property thus- *250 bought in the firm name was used in enhancing the value of the license or contract.
“Equity should give the property to the parties who by their property increased its value.” Under certain facts and circumstances, equity would so decree; but in the case at bar, those facts and circumstances that would entitle the parties to such relief, are neither pleaded, nor attempted to be proven.
We. had occasion to consider this question in Ervin v. Masterman, 16 C. C., 62, and in that case found -that there was a partnership.
We referred to certain of these Pennsylvania decisions, and did not presume to depart from the law there laid down, but, as stated in some of those decisions, it does not follow that a partnership may not exist to drill and operate oil wells, under, certain relations and conditions.
In Ervin v. Masterman, supra, there was testimony of persons claiming to be members of the partnership that they had agreed to be partners, that they had adopted a firm name, The Ervin Oil Company, that they agreed that their shares of the expenses should be collected by assesments, and that they put certain persons in authority as officers of the company to manage its affairs. Each had his own share of the oil to be sure, but it was stated by a witness that this was a matter of convenience, and that it was to be in lieu of dividends. Partnership books were kept, all contracts were made in the company name, all payments were made by checks in the company name, and every member knew of this.
We found from the evidence in that case, that the partnership was clearly proven, although the gross product was divided.
At page 73 we say:
“We hold that where all the other indicia of a partnership are unquestionably present, the mere fact that the gross product is to be divided, instead of the net profit, will not necessarily prevent a partnership, especially where by reason of the partnership obligations being met from time to time by means of assessments or otherwise, the result to the partnership is precisely the same as if the net profits were the subject of division, instead of the gross product.”
*251 And from the law as we laid it down in that case, we see no-reason to depart. But the facts in the case at bar do not, in our opinion, establish a partnership of which Winchell and Baker, or either of them were members.
We hold, therefore, that the motion for a new trial should have been sustained as to Winchell on the ground that the verdict was not supported by the evidence, and is against the law; and as to Baker upon the ground that it was against the weight of the evidence. The judgment will be reversed and the case will be remanded to be retried, and since that has to-be done, we will call attention to other alleged errors in the record.
It was shown that Mr. White in correspondence with Mr. /Kidd, in respect to some claims of the latter against the defendants in this case, used, in some instances, paper with no heading, signed “Wm. W. White for White, Cribbs & Baker. ’ In other instances he used letter heads of “Cribbs & White ” and signed “Baker, Cribbs & White.”
There is no evidence that either Mr. Baker or Mr. Winchell knew that these letters were written and signed in this way.
The common pleas court allowed these letters to go to the jury, with the caution that they were not to be used as evidence against any other person than the writer.
Now the writer, Mr. White, was in default, making no defense, -and there was no occasion for the caution.
We think that the letters of Mr. White had no proper place-in the case,- and must have been used by the jury improperly, if used at all, and we think they should have been excluded.
Counsel for plaintiff in error requested the court to charge the jury, as follows:
“The court instructs the j ury that this is an action upon two promissory notes signed “Cribbs & White, per W. W. White.” Neither Cribbs nor White make any defense and you are not required to consider any liability of Cribbs & White; their liability is admitted. You are to consider if Baker and Winchell, or either of them, are liable upon these notes, signed “Cribbs & White,, per W. W. White.”
The plaintiff can only recover on these notes against Baker and Winchell by proving that Baker and Winchell were mem *252 .bers cf a partnership, doing business under the name of Cribbs ,& White. The fact that the boilers for which these two notes were given were used on the property in which Baker and Winchell were interested does not make Baker and Winchell partners, nor make them, or either of them, liable on these notes.”
James & Beverstock, for Defendant in Error.
Whether that should have been given or not depends upon .the construction to be given the pleading and the 'state of the evidence. There are no averments in the pleading that these parties held themselves put as partners in such a way as to • estop them from denying their liability as partners upon this • claim. It is possible, however, that evidence of that character would be admissible under the averment that they were part■.ners; but we think that the substance of this ought to have been given, for the reason that there does not appear to be :any evidence of any such holding out, with the knowledge and • consent of Baker and Winchell, as would authorize their being held as partners, and for the same reason we think the court should have withheld from the jury this charge, to-witi “But if there was no actual agreement to become partners, still if the alleged partners conducted themselves by their words, acts and genetal conduct so as to reasonably lead those dealing with them to believe they were partners, and obtained credit in that way, then they cannot avoid such liability by claiming they were not partners in fact.”
For the errors mentioned, the judgment of the court of common pleas is reversed and the cause is remanded for a new trial.